UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID J. HARTLINE, et al.,

  Plaintiffs,

v.

STATOIL USA ONSHORE PROPERTIES, INC.,
et al.,

  Defendants.

Case No. 2:16-cv-315
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on Defendants' Partial Motion to Dismiss [ECF No. 6]. Defendants seek the dismissal of Count VI (Declaratory Judgment for Lease Termination), Count VII (Quiet Title), and Plaintiffs' requests for relief seeking termination or forfeiture of the parties' oil and gas lease. For the following reasons, Defendants' Motion is **GRANTED**.

### I.

On March 2, 2009, Plaintiffs David J. Hartline and Mary Theresa Hartline ("Plaintiffs") entered into an oil and gas lease (the "Lease") for their 53.27 acres of land with Phillips Production Company ("Phillips"). (Compl. ¶¶ 2, 10 [ECF No. 4].) Through subsequent assignments and other agreements, Defendants Statoil USA Onshore Properties, Inc. and XTO Energy, Inc. ("Defendants") acquired from Phillips their respective interests in the Lease. (*Id.* ¶ 12.)

As outlined in the habendum clause, the primary term of the Lease was for five years beginning March 2, 2009. (Compl. ¶¶ 13–14.) During the primary term, the lessee was permitted, but not required, to explore, test, drill, or operate for oil and gas. (*Id.* ¶¶ 14–15; Lease at PageID

148 [ECF No. 4].) The habendum clause also provided for a secondary term that would last as long as, among other things, oil or gas is produced. (Compl. ¶ 15; Lease at PageID 148.) In addition, the Lease contained a clause permitting the lessee to extend the primary term for an additional three years. (Lease at PageID 149.) Defendants exercised this option, and the primary term was extended through March 2, 2017. (Compl. ¶ 17.)

The parties' dispute revolves around the Lease's Unitization Clause. As relevant here, the Clause states:

> Lessee is hereby granted the right to pool and unitize any one or more formations under all or any part of the land described above with any other lease or leases, land or lands, mineral estates, or any of them whether owned by lessee or others, so as to create one or more drilling or production units. Such drilling or production units shall be created when in Lessee's judgment, it is necessary or advisable to develop and operate efficiently such lands. Any such pool shall not exceed 640 acres in extent and shall conform to the rules and regulations of any lawful governmental authority having jurisdiction in the premises, and with good drilling or production practice in the area in which the land is located. In the event of the unitization of the whole or any part of the land covered by this lease, lessee or designated operator shall before or after the completion of a well, record a copy of its unit operation designation in the County wherein the leased premises is located and mail a copy thereof to the lessor. In order to give effect to the known limits of the oil and gas pool, as such limits may be determined from available geological or scientific information or drilling operations, lessee may at any time increase or decrease that portion of the acreage covered by this lease which is included in any drilling or production unit, or exclude it altogether, provided that written notice thereof shall be given to lessor promptly.

(Lease at PageID 148.) Pointing to documents that Defendants filed with the Ohio Department of Natural Resources, Plaintiffs contend that Defendants breached the Unitization Clause by pooling Plaintiffs land into a unit exceeding 640 acres (*See* Compl. ¶¶ 59–60.)

Plaintiffs assert seven causes of action stemming from this alleged breach: (Counts I and II) Breach of Contract for Violation of the Lease's Unitization Clause—Invalid Unitization; (Count III) Bad Faith Pooling/Unitization; (Count IV) Conversion; (Count V) Declaratory Judgment for Invalid Unitization; (Count VI) Declaratory Judgment for Lease Termination; and

2

(Count VII) Quiet Title. (Compl. at 7–17.) Among other requests for relief, Plaintiffs seek (a) a declaration that the Defendants breached the Lease, causing it to terminate, (b) a declaration that Plaintiffs are the sole owners of the oil, gas, and mineral rights under their property, including any and all leasehold interests claimed by Defendants, (c) a declaration that the Lease is cancelled, (d) an order directing the Clerk of Court to cause the cancellation of the Lease in the public records of Monroe County, Ohio, and (e) an order quieting title against all of Defendants' claims and directing that a judgment be recorded in the Monroe County records stating that Plaintiffs are the record owner of the oil, gas, and mineral rights under their property, clear of any leasehold interest claimed by Defendants. (*Id.* at 18.)

In their present Motion [ECF No. 6], Defendants request the dismissal of Counts VI and VII, as well as the dismissal of Plaintiffs' requests for relief that seek the termination or forfeiture of the Lease. These claims and requests for relief hinge on the Lease being terminated or forfeited due to Defendants' alleged breach of the Unitization Clause. (*See* Compl. at 15–18.)

## II.

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Such an action will be dismissed where "there is no law to support the claims made" or where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint

3

must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

**B.      Lease Forfeiture**

Defendants insist that they did not breach the Unitization Clause. But, as relevant to their present Motion, they argue that even if they did breach the Unitization Clause, that breach would not be grounds for the termination or forfeiture of the Lease. (Mot. to Dismiss at 5 [ECF No. 6].) The breach would only be grounds for damages. (*Id.*) The Lease, they argue, is forfeited in only three limited circumstances. (*Id.* at 7.) A breach of the Unitization Clause is not one of those circumstances. (*Id.*)

Plaintiffs reject this interpretation. Pointing to a portion of the Lease that they label the "Forfeiture Clause," Plaintiffs contend that the Lease can be cancelled if Defendants fail to perform, in whole or in part, *any* of their express or implied covenants, conditions, or

4

obligations—including any obligation under the Unitization Clause. (Resp. at 1–2 [ECF No. 10].) In the "Forfeiture Clause," the parties agreed that

> [t]his lease shall never be forfeited or terminated for failure of lessee to perform in whole or in part any of its express or implied covenants, conditions or obligations until it shall have been first finally judicially determined that such failure exists, and lessee shall have been given a reasonable time after such final determination within which to comply with any such covenants, conditions or obligations.

(Lease at PageID 149 [ECF No. 4].)

### 1. Ohio Contract Law

"[T]he rights and remedies of the parties to an oil and gas lease must be determined by the terms of the written instrument." *Eclipse Resources–Ohio, LLC v. Madzia*, No. 2:15-cv-177, 2016 WL 814958, at *6 (S.D. Ohio Mar. 2, 2016). Accordingly, the Court looks to the Ohio law of contract interpretation to resolve this dispute.

Under Ohio law, the interpretation of written contract terms is a matter of law for initial determination by the court. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). The court's role in interpreting a contract is to give effect to the parties' intent. *Id.* That intent, in turn, "'is presumed to reside in the language they choose to use in their agreement.'" *Id.* (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)). "[A] court's construction should attempt to harmonize all provisions of the contract, and should not dismiss any provision as inconsistent if a reasonable interpretation exists that gives effect to both." *Benzel v. Chesapeake Exploration, L.L.C.*, No. 2:13-cv-280, 2014 WL 4915566, at *4 (S.D. Ohio Sept. 30, 2014). Courts, in other words, should avoid interpreting a contract in a way that renders clauses superfluous. *Bartell v. LTF Club Operations Co., Inc.*, No. 2:14-cv-401, 2015 WL 1730415, at *7 (S.D. Ohio Apr. 14, 2015); *Fifth Third Mortg. Co. v. Rankin*, 4th Dist. Pickaway No. 10CA45, 2011-Ohio-2757, ¶ 24. And when interpreting common words in a contract, those

5

words "'are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the [contract].'" *Savedoff*, 524 F.3d at 764 (quoting *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978)).

When a contract's terms are unambiguous, a court must determine the parties' intent by looking only to the writing itself. *Savedoff*, 524 F.3d at 763. When, however, a contract's terms are unclear or ambiguous, courts may consider extrinsic evidence to ascertain the intent of the parties. *Id.* A contract's language is ambiguous "'only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" *Id.* (quoting *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio 2003)).

Also relevant here is the law regarding forfeiture. Under Ohio contract law, forfeitures are abhorred. *Belmont Hills Country Club v. Beck Energy Corp.*, 7th Dist. Belmont No. 13 BE 18, 2015-Ohio-1322, ¶ 46; *Wuenschel v. Northwood Energy Corp.*, 11th Dist. Ashtabula No. 2008-A-0039, 2008-Ohio-6879, ¶ 46. Thus, as the Ohio Supreme Court has explained, "'[w]here certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied.'" *Ionno v. Glen-Gery Corp.*, 443 N.E.2d 504, 508 (Ohio 1983) (quoting *Beer v. Griffith*, 399 N.E.2d 1227, paragraph three of the syllabus (Ohio 1980)); *see also Harris v. Ohio Oil Co.*, 48 N.E. 502, paragraph two of the syllabus (Ohio 1897) (holding that "to work a forfeiture of the lease, there must be a breach of a condition or covenant which is mentioned in the lease; . . . and that, certain causes of forfeiture being specified in the lease, others cannot be implied"); *Belmont Hills*, 2015-Ohio-1322, ¶ 46 ("When causes for forfeiture are explicitly delineated in the lease, others cannot be implied."); *Layne v. Baker*, 86 Ohio App. 293, 301, 91 N.E.2d 539 (3d Dist. 1949) (holding that the breach of a covenant in a lease does not result in the forfeiture of that

6

term unless there is an express stipulation requiring forfeiture). In the absence of an express forfeiture provision, forfeiture is an appropriate remedy only where legal remedies for damages are inadequate. *See Ionno*, 443 N.E.2d at 508.

With these principles in mind, the Court concludes that Plaintiffs cannot obtain a forfeiture of the Lease by alleging a breach of the Unitization Clause.

### 2. Explicit Grounds for Forfeiture

The Lease explicitly provides for forfeiture in three specific circumstances: (1) where the conditions for maintaining the secondary term under the habendum clause are not being met; (2) where delay rentals have not been paid and the lessee fails to cure the nonpayment within fourteen days after receiving written notice; or (3) where the lessee surrenders all or any part of the Lease. (*See* Lease at PageID 148–49 [ECF No. 4].) A breach of the Unitization Clause is not one of those circumstances. Given that the Lease contains explicit causes of forfeiture, other causes cannot be implied. *See Ionno*, 443 N.E.2d at 508.

Plaintiffs contend that the "Forfeiture Clause"—through its reference to "any of [Defendants'] express or implied covenants, conditions or obligations"—explicitly indicates that a breach of the Unitization Clause can result in forfeiture. (Lease at PageID 149.) A plain reading of the so-called Forfeiture Clause undermines Plaintiffs' interpretation. The Clause begins by stating that the Lease "shall never" be automatically forfeited or terminated as a result of Defendants' failure to perform. (*Id.*) The Clause continues by explaining when a failure to perform can result in a forfeiture of the Lease. Forfeiture involves a two-step process: it occurs only after (i) a court has made a determination that the failure exists and (ii) Defendants have been given a reasonable time to cure the performance failure found by the court. (*Id.*) Contrary to Plaintiffs' insistence, the Clause, when given its most natural reading, does not specify the

7

breaches that could result in forfeiture. (*See id.*) The Clause, instead, describes how forfeiture is to be effectuated under the Lease. (*See id.*)

Ohio courts refer to this type of two-step provision as a judicial ascertainment clause. *See, e.g., Conny Farms, Ltd. v. Ball Res., Inc.*, 7th Dist. Columbiana No. 09 CO 36, 2011-Ohio-5472, ¶¶ 16–17. Judicial ascertainment clauses are characterized by their two-part approach to forfeiture. Under these clauses, like the Clause here, a lease is only forfeited after a court has found a performance failure *and* after the lessee has been given a reasonable time, subsequent to the court's finding, to cure that failure. *See, e.g., id.* ¶ 17; *Morsheiser Revocable Living Trust v. Anschutz Exploration Corp.*, No. 5:12-cv-1734, 2012 WL 5378741, at *3 (N.D. Ohio Oct. 31, 2012). Although the validity of these clauses is questionable under Ohio law, *see Conny Farms*, 2011-Ohio-5472, ¶ 26 (concluding that "judicial ascertainment clauses are against public policy in Ohio and therefore unenforceable"),[1] their meaning is not. They outline the procedure for effectuating a forfeiture.

A plain reading of the Lease as a whole also undermines Plaintiffs' interpretation of the "Forfeiture Clause." Quite simply, Plaintiffs' interpretation of the Clause would render superfluous the other, explicit causes of forfeiture found in the Lease. If the parties had intended to make forfeiture a remedy for the lessee's failure to perform *any* of its express or implied covenants, the parties would have had no reason to enumerate specific circumstances where

---

[1] In *Conny Farms*, Ohio's Seventh District Court of Appeals determined that judicial ascertainment clauses are against public policy in Ohio for three reasons: (1) they "require courts to try cases piecemeal, which is generally disfavored"; (2) they "require at least two trials and two judgments and . . . improperly convert trial and appellate courts into 'mere boards of arbitration'"; and (3) they "'might enable the lessee to subject the lessor to needless and unfair pressure to obtain concessions.'" *Conny Farms*, 2011-Ohio-5472, ¶ 19 (quoting *Wellman v. Energy Res., Inc.*, 557 S.E.2d 254, 260 (W. Va. 2001)).

8

forfeiture is appropriate. The Court's interpretation of the Clause gives it effect without rendering the other references to forfeiture or termination meaningless.[2]

### 3. Adequacy of Legal Remedies

The Lease does not explicitly provide for forfeiture when the Unitization Clause is breached. Consequently, forfeiture would be an appropriate remedy for a breach of the Unitization Clause only where legal remedies for damages are inadequate. *See Ionno*, 443 N.E.2d at 508. Plaintiffs, however, have not alleged that damages are an inadequate remedy. (*See generally* Compl. [ECF No. 4].) They have, instead, pleaded figures indicating that their damages are calculable and, by extension, adequate to remedy the harm they purportedly suffered. (*See id.* ¶¶ 98–105.) Forfeiture is, thus, not an available remedy in this case.

### III.

Defendants' Partial Motion to Dismiss [ECF No. 6] is, accordingly, **GRANTED**. Counts VI (Declaratory Judgment for Lease Termination) and VII (Quiet Title) are **DISMISSED**, as are Plaintiffs' requests for relief seeking termination or forfeiture of the Lease.

**IT IS SO ORDERED.**

_3-14-2017_
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[2] Because the terms of the Lease are unambiguous, the Court need not consider extrinsic evidence to ascertain the intent of the parties.